# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONNA CHANCE** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-9427** |
| **DESIGNER WARDROBE TRAILERS, INC.,** *et al.* | **SECTION: I/4** |

## ORDER AND REASONS

Before the Court are two motions for summary judgment filed by third party defendant, Paramount Pictures Corporation ("Paramount"), seeking dismissal of Designer Wardrobe Trailers, Inc.'s ("DWT") third party claims against Paramount on the grounds that the Louisiana Worker's Compensation Act bars DWT's claims against Paramount and that Paramount and DWT do not have a valid, enforceable agreement requiring Paramount to indemnify and defend DWT.[1] For the following reasons, the motion with respect to workers' compensation is **DENIED** and the motion with respect to Paramount's obligation to indemnify and defend is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Plaintiff, Donna Chance ("Chance"), filed this lawsuit in state court, alleging that she was injured while working as a costumer during the filming of the motion picture, "The Curious Case of Benjamin Button," in New Orleans, Louisiana.[2] According

---

[1] Rec. Doc. Nos. 91, 110.

[2] Rec. Doc. No. 1-2, paras 3-5.

1

to plaintiff's petition, she was rolling a garment rack of costumes onto a lift gate of a wardrobe trailer when the gate rose and her right foot became crushed between the gate and an open door of a storage compartment.[3] Plaintiff's petition alleges that DWT "was the designer/co-designer/manufacturer and operator" of the tractor trailer[4] and that the accident was caused by DWT's negligent design and manufacture of the trailer's lift gate area.[5]

On December 10, 2007, plaintiff's lawsuit was removed to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[6] DWT filed its answer in April, 2008, and incorporated a third party demand against Paramount, alleging that DWT leased the wardrobe trailer to Paramount and that the lease agreement required Paramount to indemnify DWT and to obtain insurance to fulfill its obligation to defend and indemnify DWT.[7]

DWT amended its third party complaint in July, 2008,

---

[3] *Id.*

[4] *Id.* at paras. 1-2. Plaintiff also named Wabash National Corporation ("Wabash") as "the designer/co-designer/manufacturer and operator" of the tractor trailer, but Wabash was voluntarily dismissed on March 24, 2008. Rec. Doc. No. 20.

[5] *Id.* at para. 6.

[6] Rec. Doc. No. 1.

[7] Rec. Doc. No. 25, paras. III-V. DWT also named Travelers as a third party defendant based on its belief that Paramount secured Travelers as an insurer for DWT. However, this Court recently dismissed Travelers pursuant to Travelers' motion to dismiss, finding that DWT did not come within the definition of additional insured under the Travelers' policy.

alleging that an employee of Paramount[8] negligently raised the lift gate of the trailer while the exterior doors remained open. DWT alleges that the employee's negligence is imputable to Paramount.[9]

Paramount filed two motions for summary judgment. In its first motion, Paramount argues that as plaintiff's employer, it is immune from all tort liability for injuries arising out of the course and scope of plaintiff's employment pursuant to the Louisiana Workers' Compensation Act. Paramount's second motion seeks dismissal of DWT's claim on the basis that the lease agreement between Paramount and DWT does not obligate Paramount to indemnify and defend DWT.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine

---

[8] DWT's initial third party complaint named Paramount Pictures Corporation, and DWT's amended third party complaint named Paramount Pictures Corporation/Viacom.

[9] Rec. Doc. No. 42, paras. 4-5.

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*  The nonmoving party's evidence, however, "is to be believed,

and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. DISCUSSION

### A. Louisiana Worker's Compensation Act

Paramount argues that in light of DWT's allegations that plaintiff's injury resulted from another Paramount employee's negligence in operating the trailer's lift gate, Paramount's liability is limited by the Louisiana Workers' Compensation Act ("LWCA"). Accordingly, Paramount contends that DWT's claim against Paramount must be dismissed because "Paramount is protected by the LWCA, which shields employers like Paramount from tort liability 'arising out of and in the course and scope of employment.'"[10]

The LWCA provides that if an employee "receives personal injury by accident arising out of and in the course of his employment," the employer is obligated to pay compensation to the employee. La. Rev. Stat. Ann. §23:1031(A)(1998). Paramount is correct that the LWCA provides the "exclusive remedy" against employers. La. Rev. Stat. Ann. §23:1032 (A). Indeed, the LWCA provides in pertinent part:

> (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of injury, or compensable sickness or

---

[10] Rec. Doc. No. 91-2, p. 3.

> disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute....
> (b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or officer, director, stockholder, partner, or employee of such employer....

*Id.* The law is clear that, pursuant to the LWCA, "an employee may not sue his employer in tort for non-intentional injuries sustained during the course and scope of employment." *Brown v. Conn. Gen. Life Ins.*, 793 So. 2d 211, 213 (La. Ct. App. 4th Cir. 2001). With respect to an employer and employee, the LWCA creates an exchange, where an employee is entitled to compensation for an on-the-job injury while an employer receives immunity from any other liability arising out of the injury unless resulting from intentional acts. *Id.*

Notwithstanding, an employer may be subject to "indirect liability" for its employee's injuries if the employer has contracted to indemnify a third party. *Norfleet v. Jackson Brewing Market, Inc.*, 748 So. 2d 525, 526-27 (La. Ct. App. 4th Cir. 1999); *Brown*, 793 So. 2d at 214; *Jarreau v. City of Baton Rouge*, 602 So. 2d 1124, 1126-27 (La. Ct. App. 1st Cir. 1992)("The fact that an employer is statutorily immune from tort liability does not limit its ability to agree contractually that it will hold a third party harmless from damages to an employee attributable to the employer's negligence."). For instance, in *Norfleet,* where a plaintiff sued

6

her employer's lessor for injuries arising out of the course and scope of her employment, a Louisiana appellate court held that "the exclusive remedy provision" did not apply to a third party demand against the employer in light of the employer's lease agreement to indemnify its lessor. *Id.* at 526. In a similar case, the court concluded that an employer "cannot relinquish [its indemnity] obligation solely because [the plaintiff] happened to be [its] employee." *Brown*, 793 So. 2d at 214. Likewise, if a valid indemnity agreement exists in the instant case, the LWCA does not provide Paramount a means of escaping its indemnity obligation merely because plaintiff's injuries allegedly arose out of the course and scope of her employment.[11]

### B. <u>Obligation to Indemnify and Defend</u>

Paramount contends that the lease agreement that it executed with DWT does not obligate Paramount to indemnify and defend DWT. The lease[12] provides:

> All risk of loss or damage of said equipment from whatever cause during this agreement or before redelivery to Lessor, shall be assumed by lessee. During the term of this lease, Lessee agrees to indemnify Lessor, its officers, employees and agents, and hold them harmless for all claims, action suits, proceedings, posts, expenses, damages and liabilities, including reasonable attorneys fees, arising out of, or in connection with or resulting from equipment or materials including, but not

---

[11] The Court notes that the only case that Paramount cites in support of its argument for immunity is not relevant to the instant case as there is no discussion of an indemnity agreement. *See Ballard v. Exxon Corp.*, No. 86-422, 1987 WL 194049 (E.D. La. 1987).

[12] Rec. Doc. No. 110-4, para. 2.

7

> limited to its ownership, use parking, storage, maintenance and/or operation of said equipment, unless arising out of the sole negligence of Lessor.

The lease agreement further provides that any legal dispute arising from the agreement shall be governed by California law. Because the Court has diversity jurisdiction over this matter, the Court applies the choice of law principles of the forum state, in this case Louisiana. *Abraham v. State Farm Mutual Automobile Ins. Co.*, 465 F.3d 609, 610 (5th Cir. 2006)(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Louisiana law generally "allows parties to select the law that will determine the outcome of disputes arising from a contract." *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 250 (5th Cir. 2001)(citing La. Civ. Code Ann. art. 3540).[13]

Under California law, an indemnity agreement is interpreted in accordance with the same rules governing other contracts. *Ralph M. Parsons Co. v. Combustion Equip. Assocs.*, 172 Cal. App. 3d 211, 220 (Cal. Ct. App. 1985). If it is "clear and explicit, and does not involve an absurdity," the language of a contract must govern its interpretation. Cal. Civ. Code § 1638; *see Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009). "When the

---

[13] Article 3540 provides: "All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."
Neither party disputes the validity of the lease agreement's choice of law provision, nor does either party contend that the application of California law would contravene public policy.

8

contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639; *see Comedy Club*, 553 F.3d at 1285. "'[I]f reasonably practicable,' a contract must be interpreted as a whole, 'so as to give effect to every part,...each clause helping to interpret the other.'" *Comedy Club*, 553 F.3d at 1285 (quoting Cal. Civ. Code. § 1641). Accordingly, "one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless." *Id.* (quoting *In re Affordable Hous. Dev. Corp.*, 175 B.R. 324, 329 (9th Cir. BAP 1994)). However, if a contract is susceptible to two reasonable interpretations, it is ambiguous. *Id.* In the event of ambiguity or uncertainty, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

### 1. <u>Enforceability of Agreement</u>

Paramount contends that due to the "sheer number of typographical errors," the lease agreement is not enforceable.[14] Although the clause at issue appears to be inartfully drafted due to poor word choice and grammatical errors such as comma placement, the Court is not persuaded that the agreement is unenforceable or ambiguous.[15]

---

[14] Rec. Doc. No. 110-2, p. 4.

[15] DWT's owner testified in a deposition that he did not retain an attorney to draft the lease agreement. Rec. Doc. No. 109-2, pp. 2-3.

9

The clause clearly indicates the parties' intention that Paramount indemnify DWT for all claims and liability arising out of or in connection with or resulting from Paramount's use or operation of the leased equipment, unless such liability arises solely out of DWT's negligence. Notwithstanding careless drafting errors, the Court has no difficulty understanding that this clause may obligate Paramount to indemnify DWT.[16]

The Court, however, finds no reference to any duty to defend in the lease agreement and DWT has not directed the Court to any particular clause with respect to a defense obligation. Nor does DWT make any argument with respect to Paramount's duty to defend in its opposition memorandum. Accordingly, DWT's claim for defense is **DISMISSED WITH PREJUDICE.**

### 2. Indemnification Against DWT's Negligence

Paramount further contends that the indemnity agreement does not clearly and explicitly obligate Paramount to indemnify DWT against DWT's own negligence. California courts have recognized contracts providing "for indemnification against an indemnitee's own negligence." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628(Cal. 1975).[17] Such agreements "must be clear and

---

[16] California law defines indemnity as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties...." Cal. Civ. Code § 2772.

[17] As previously stated, California law is applicable to this Court's interpretation of the indemnity agreement. Paramount relies upon California law. Rec. Doc. No. 110-2, p. 4. Accordingly, *Moore v. Kenilworth/Kailas Properties* is not dispositive of this case. *See Moore*, 978 So. 2d 475 (La. Ct.

10

explicit and [are] strictly construed against the indemnitee." *Id.*; *Edmondson Prop. Mgmt v. Kwock*, 67 Cal Rptr. 3d 243, 251-52 (Cal. Ct. App. 2007)("Language imposing this liability must be express and unequivocal so that the contracting party is advised fully in definite terms that it has agreed to indemnify the active negligence of the other party.").

On the other hand, California courts have traditionally held that a general indemnity agreement "that does not address and is silent with respect to the issue of the indemnitee's negligence" does not obligate a party to indemnify against an indemnitee's active negligence. *Parsons*, 172 Cal. App. 3d at 220; *Rossmoor*, 13 Cal. 3d at 628, 629-33; *Edmonson*, 67 Cal. Rptr. 3d at 251; *Rooz v. Kimmel*, 64 Cal. Rptr. 2d 177, 183 (Cal. Ct. App. 1997). Instead, such an agreement only requires indemnification against an indemnitee's passive negligence.[18] *Id*. In clarifying this general rule, the California Supreme Court stated that "the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control." *Id.* at 633.

---

App. 4th Cir. 2008).

[18] The California Supreme Court described passive negligence as "mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law." The court stated that "active negligence...is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee has agreed to perform." *Rossmoor*, 13 Cal. 3d at 629.

11

Paramount argues that the lease agreement not only lacks "clear and explicit language" obligating Paramount to indemnify DWT against DWT's own negligence, but the agreement specifically excludes such indemnity through the phrase "unless arising out of the sole negligence of the Lessor."[19] However, California courts have interpreted such language differently, finding that a specific exclusion for the indemnitee's sole negligence indicates an intent to indemnify against the indemnitee's own negligence when it is concurrent or combined with the negligence of the indemnitor or other parties. *See, e.g., Parsons*, 172 Cal. App. 3d at 220-21; *see Edmondson*, 67 Cal. Rptr. 3d at 252.

In *Parsons*, a California appellate court considered an indemnity contract containing similar, albeit better drafted, language whereby a subcontractor agreed to hold the contractor and owner harmless and

> indemnify them against all liability, loss, damage, expense, costs (including without limitation costs and fees of litigation)...arising out of or in connection with Subcontractor's performance of Work hereunder or its failure to comply with any of its obligations contained in the Agreement, *except such loss or damage which was caused solely by the negligence of Contractor or of Owner*. (Emphasis added)

172 Cal. App. 3d at 219. The court rejected the subcontractor's argument that the language created a general indemnity agreement that did not obligate the subcontractor to indemnify the contractor

---

[19]Rec. Doc. No. 110-2, p. 8.

against its own negligence. *Id.* at 220. Due to the language excluding indemnification for the contractor's sole negligence, the court found that the indemnity agreement was not silent as to the indemnitee's negligence. *Id.* The court explained that "[s]ince only loss or damage caused solely by [the contractor's] or [owner's] negligence was excluded, loss or damage resulting from the combined negligence of [subcontractor/indemnitor] and [contactor/indemnitee] was necessarily included." *Id.* Further, the court explained that such exclusionary language "clearly and explicitly" addressed the issue of the indemnitee's negligence. *Id.* at 221.[20]

The lease agreement executed by Paramount and DWT obligates Paramount to indemnify DWT "for all claims" arising out of or in connection with the use of the trailer equipment "unless arising out of the sole negligence" of DWT. In light of this language, the Court is convinced that the indemnity agreement specifically addresses the issue of DWT's own negligence and that Paramount has agreed to indemnify DWT against its own negligence so long as DWT's

---

[20]The court specifically stated:
> Here, we believe, as did the trial court, that the indemnity agreement between Parsons and Combustion clearly and explicitly addresses the issue of Parson's negligence. It provides that Combustion shall indemnify Parsons for all liability in connection with the work unless it was caused solely by the negligence of Parsons or Kerr-McGee. It follows necessarily that all other liability, whether resulting from the negligence of Combustion or the concurrent negligence of Combustion and Parsons and without regard to whether the negligence of the parties was "active" or "passive," was intended to be the responsibility of Combustion. Good legal draftsmanship dictates that coverage be expressed by all-inclusive terms such as "all"...and that exclusions be specifically enumerated. *Id.*

13

negligence is concurrent with the negligence of Paramount or another party. Although plaintiff's petition only alleges the negligence of DWT in designing and manufacturing the trailer, DWT's third party demand alleges the negligence of a Paramount employee in operating the trailer's lift gate. Further, nothing prevents the jury from allocating fault to parties other than DWT. In the event that the jury finds that plaintiff's injuries were caused not solely by DWT's fault, but also by the combined fault of Paramount or any other party, the lease agreement obligates Paramount to indemnify DWT.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Paramount's motion for summary judgment with respect to the LWCA[21] is **DENIED.**

**IT IS FURTHER ORDERED** that Paramount's motion for summary[22] is **DENIED** with respect to plaintiff's claim for indemnity and **GRANTED** with respect to plaintiff's claim for defense.

New Orleans, Louisiana, March 24th, 2009.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[21] Rec. Doc. No. 91.

[22] Rec. Doc. No. 110.

14